385 A.2d 535

**COMMONWEALTH of Pennsylvania**

v.

**Lonnie COLEMAN a/k/a Lonnie Coburn, Appellant.**

Superior Court of Pennsylvania.

Submitted April 12, 1976.

Decided April 13, 1978.

84

John J. Dean and John H. Corbett, Jr., Assistant Public Defenders, Pittsburgh, for appellant.

Robert L. Eberhardt, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

## OPINION

PER CURIAM:

The six Judges who heard this appeal being equally divided, the judgment of sentence is affirmed.

PRICE, J., files an opinion in support of affirmance in which CERCONE and VAN der VOORT, JJ., join.

SPAETH, J., files an opinion in support of reversal in which JACOBS, President Judge and HOFFMAN, J., join.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

PRICE, Judge, in support of affirmance:

Appellant was convicted of possession of a controlled substance in violation of The Controlled Substance, Drug,

Device and Cosmetic Act,[1] and of bringing contraband into a prison.[2] The trial was before a judge, the appellant having waived jury trial. The sole issue presented on this appeal is the sufficiency of the evidence. After reading the record in the light most favorable to the Commonwealth, which is entitled to all reasonable inferences arising from the verdict, we conclude that the evidence is sufficient to prove guilt beyond a reasonable doubt.

This record establishes that on September 10, 1974, at approximately 7:00 p. m., a correctional officer of the Allegheny County Jail, while inspecting a cell block, observed appellant, an inmate of the jail assigned to that cell block, alone in his cell. Appellant was the only assigned inmate of that cell. Appellant was sitting on his bed injecting a substance into his arm. (NT 7–8). Before entering the cell, in accordance with jail policy, the officer summoned another officer and both entered appellant's cell within fifteen (15) to thirty (30) seconds following the observation. (NT 8–9). At the time the officers entered the cell, the cell door was unlocked. (NT 9). They observed appellant standing in front of the commode with his back to the door. Also, the officers found a plunger to a syringe and a Vaseline jar lid, with the bottom burned, in the sink. Two (2) red syringe needle caps were discovered on appellant's bunk and two (2) aluminum foil packets were found in the bedding. (NT 9–10). The first officer observed bloody fluid and a pinch mark, which appeared to have been made by a strap, on appellant's arm. (NT 11). The substance in the aluminum foil packets was identified as heroin and quinine, and quinine residue was also found in the two (2) red syringe needle caps. (NT 12–13).

Appellant was on a work release program which allowed him to leave the prison every day, returning before 4:30 p. m. (NT 14–16). The officer testified that it is a jail policy to lock the cells of prisoners who are not present, but he could

1. Act of April 14, 1972, P.L. 233, No. 64, § 13 (35 P.S. § 780–113) *as amended.*

2. 18 Pa.C.S. § 5123.

not positively testify that appellant's cell was in fact locked on that day. The officer further testified that it is a jail policy to subject all returning prisoners, before re-entry to prison, to a pat search and a strip search, although he could not positively testify that appellant was in fact subjected to those searches on that day. It is possible, according to the testimony, that a person could come back into the prison without being strip searched, and it is also possible, according to the same testimony, for a prisoner to smuggle some packets of heroin and a syringe even if that prisoner was strip searched. (NT 22–24). Each of the packets of heroin found in the bedding were folded over several times and were about the size of a dime. (NT 11).

██ The sufficiency of the evidence in regard to the possession conviction is so evident that a challenge thereof truly merits the label of "frivolous". The appellant was actually seen injecting the substance into his arm, and heroin was found in the cell which he occupied alone.

Appellant's second issue, the sufficiency of the evidence on the charge of bringing contraband into a prison, merits more detailed consideration.

██ Circumstantial evidence, in and of itself, may be sufficient to establish both the commission of a crime and the connection of the accused with the crime. *Commonwealth v. Simpson*, 436 Pa. 459, 260 A.2d 751 (1970); *Commonwealth v. Finnie*, 415 Pa. 166, 202 A.2d 85 (1964). The standard for evaluating the sufficiency of the evidence is the same whether it be direct or circumstantial. *Commonwealth v. Fortune*, 456 Pa. 365, 318 A.2d 327 (1974). The test for sufficiency of evidence on appellate review is whether accepting as true all evidence together with *all reasonable inferences therefrom* upon which the fact finder could properly have based its verdict, such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt. As verdict winner, the Commonwealth is entitled to have the evidence viewed in a light most favorable to it. *Commonwealth v. Waters*, 463 Pa. 465, 345 A.2d 613 (1975).

■ As Judge Loran L. Lewis, the fact finder in appellant's trial stated:

"Whether there was sufficient evidence under the second count charging defendant with bringing heroin into the prison is the primary issue. The relevant facts bearing on this issue [are] that the defendant had heroin in his cell; that he was on a work release program which allowed him to leave the prison every day; that he would have, in the normal course of prison procedure, been strip searched before returning to his cell and that the packets of heroin found were about the size of a dime.

A strong inference can reasonably be drawn that the defendant brought the heroin into the prison himself rather than obtaining it within the prison. This inference can be drawn from the fact that he was outside the prison, apparently on a daily basis. It is certainly more likely he would have far more opportunity to obtain drugs while outside the prison walls than inside. Furthermore, since the defendant was taking heroin, it can be assumed he was an addict. It seems reasonable that an addict would want to be sure he had an adequate supply of drugs, and he could best do this by bringing it with him into the prison since the opportunity to obtain same inside the prison would be less likely. There was no direct testimony that defendant was strip searched on the day in question but, even assuming he was, it would not be difficult to hide a packet of heroin on his body that was the size of a dime.

Under the facts of this case and the reasonable inferences which can be drawn from those facts, it is the Court's conclusion that the Motion in Arrest of Judgment should be denied."

This is not a case where conviction is based on mere suspicion or conjecture. *See Commonwealth v. Larkins,* 235 Pa.Super. 19, 341 A.2d 204 (1975). The facts and circumstances reasonably inferred therefrom are of such a character as to establish guilt beyond a reasonable doubt. *Commonwealth v. Garrett,* 423 Pa. 8, 222 A.2d 902 (1966).

These packets of heroin were about the size of a dime, and it would not be difficult to hide a packet of that size and avoid detection either from a pat search or a strip search. Further, although the Commonwealth's testimony establishes such searches as prison routine, it also concedes that it is possible to return to prison without such searches. Based on this testimony, it is indeed a permissible and reasonable inference that this appellant brought contraband into this prison.

Further, it is a permissible inference, as made by Judge Lewis, that drugs are more readily available on the street and that, given a daily opportunity, appellant would be more likely to obtain drugs while outside the prison walls than inside. This is not to say that drugs are never available within prison walls, for sad case examples are available to prove otherwise. But the reasonable inference from this record is, and indeed the lower court found, that this appellant brought these drugs into the prison, having the opportunity as a participant in the work release program and the history of drug use. (NT 31). Evidentiary inferences are constitutionally firm so long as the inferred fact is more likely than not to flow from the proved fact on which it is made to depend. *Commonwealth v. Shaffer,* 447 Pa. 91, 288 A.2d 727 (1972); *Commonwealth v. Burke,* 229 Pa.Super. 176, 324 A.2d 525 (1974). Judicial notice plays no part either in this conclusion or in the acceptance of the fact that drugs are more readily available on the street.[3] One need not be a judge nor a correctional expert to know that there are problems in our prisons. Further, one need not be a judge nor an expert to conclude from this record that drugs are more readily available on the street than in a prison. From a record that establishes a routine, admittedly imperfect, that is observed in part to protect the prison population from the drug traffic of the street, it is not improper, nor is it judicial notice, for the fact finder to conclude that heroin

3. Judge Spaeth, in his dissenting opinion, concludes the lower court took judicial notice of the greater availability of heroin outside the jail than inside.

is more available outside, than inside, a prison. Such a conclusion can be no more than a common sense deduction from this record. It is one any jury or reasonable person could make, and should properly be permitted to make, from this record.

"[T]he Commonwealth does not have to establish guilt to a mathematical certainty, and may in a proper case rely wholly on circumstantial evidence . . . ." *Commonwealth v. Roscioli,* 454 Pa. 59, 62, 309 A.2d 396, 398 (1973).

The judgments of sentence are affirmed.

CERCONE and VAN der VOORT, JJ., join in this opinion in support of affirmance.

SPAETH, Judge, in support of reversal:

While I agree that the evidence was sufficient to prove possession of heroin, I cannot agree that it was sufficient to prove that appellant brought the drug into prison.

There being no direct evidence that appellant brought heroin into prison, his conviction on that charge rests solely on inferences from circumstantial evidence. Such evidence may be sufficient, as the cases cited by Judge Price demonstrate, provided we are satisfied that "the inferred fact is more likely than not to flow from the proved fact on which it is made to depend." Judge Price's Opinion at 88.[1] As I

1. *But see Commonwealth v. Jones,* 242 Pa.Super. 471, 364 A.2d 368 (1976), where Judge Price, speaking for the majority, observed that *Commonwealth v. DiFrancesco,* 458 Pa. 188, 329 A.2d 204 (1974), and *Commonwealth v. Turner,* 456 Pa. 116, 317 A.2d 298 (1974), hold that where the *sole* evidence of guilt or an element of the offense is inferential, then the inferred fact must follow beyond a reasonable doubt from the proved facts. This necessarily follows from the burden placed on the Commonwealth to prove every element of an offense beyond a reasonable doubt.
242 Pa.Super. at 479, 364 A.2d at 372.
Here, the sole evidence that appellant brought drugs into prison is inferential. I do not see why Judge Price here applies a "more likely than not" test rather than the "beyond a reasonable doubt" test he acknowledged in *Jones.* However, setting aside this contradiction, and assuming for discussion the propriety of the lower standard, by my reading of the record the Commonwealth's evidence remains insufficient.

read Judge Price's and the lower court's opinions, they infer that appellant brought heroin into prison from three "proved facts": (1) appellant had daily opportunity to obtain drugs outside prison; (2) he was not definitely strip-searched when he returned to prison; and (3) drugs are more readily available outside prison than inside.  However:

(1) Appellant had daily opportunity to obtain drugs outside *and inside* prison.  Since he spent more hours each day inside than outside, the inference more likely than not to flow from these facts is that he got the drugs inside, not outside.

(2) As Judge Price puts it, the Commonwealth's testimony "concedes that it is possible to return to prison without [pat or strip] searches."  Judge Price's Opinion at 88.  (I am not sure why Judge Price views this as a concession by the Commonwealth, since the lack of a strip search seems to me vital to the Commonwealth's allegation that appellant was able to smuggle drugs in.) [2]  In fact, the testimony on this point was that it was "unlikely" that appellant was not strip searched.  A correctional officer testified:

Q. When you say strip searched, is it possible for anyone to get back into this institution without being strip searched who is not on furlough?

A. *It is unlikely,* but it is possible that a person could come back into the institution without being strip searched because it is standard policy that all people

2. Judge Price states that "[t]hese packets of heroin were about the size of a dime, and it would not be difficult to hide a packet of that size and avoid detection either from a pat search or a strip search." Judge Price's Opinion at 88.  I grant the possibility in the case of a pat search, but the overwhelming likelihood is that appellant was strip searched.  *See* discussion in text, *infra*.  In the case of a strip search, it may be seen from the following description that the possibility of concealment is most unlikely:
> This requires the inmate to take off all of his clothes, which are then searched, and submit to a body search.  The inmate raises his arms, opens his mouth for inspection and removes his dentures, if any.  He must also spread his legs apart, lift his penis and scrotum to reveal the area directly between his legs.  He must also bare the soles of his feet.  The inmate must then bend over and spread his buttocks to reveal his anus to the guard.
> *Hodges v. Klein,* 412 F.Supp. 896, 897 (D.N.J.1976).

coming back in from outside programs are, along with all new people entering the institution, they are, you know, pat searched and processed, *and then they are strip searched.*

N.T. 23–24 (emphasis added).

Again, the inference more likely than not to flow from these facts is that appellant was not able to smuggle drugs in, but instead got them inside the prison.

(3) The lower court takes as a fact that "[i]t is certainly more likely [appellant] would have far more opportunity to obtain drugs while outside the prison walls than inside." In my view this observation is not based on any evidence in the record; it therefore must be concluded that the court took judicial notice of the greater availability of heroin outside the jail than inside. However, here, the place where the heroin was obtained was an element of the crime, which had to be proved beyond a reasonable doubt; it was not the type of "fact" that the doctrine of judicial notice requires the fact-finder to accept. *See State v. Lawrence,* 120 Utah 323, 234 P.2d 600 (1951). Judicial notice may be taken of a fact that "is so commonly known in the community as to make it unprofitable to require proof, and so certainly known as to make it indisputable among reasonable men." McCormick on Evidence, § 329 at 760 (2d ed., 1972); *cf.* Fed.R.Ev. 201, and the Advisory Committee's Note to the rule. The "fact" that drugs are more available to a prisoner outside a prison than inside is not "indisputable," and may not be a fact at all.[3] One needs specific information as to the availability of

3. There is ample indication that drugs may be available inside prisons, having been smuggled in by prisoners or by other persons. See *Sostre v. Prieser,* 519 F.2d 763 (2d Cir. 1975) (remanding for findings on the necessity of rectal searches to prevent the intra-prison transfer of contraband as applied to a segregated inmate); *Hodges v. Klein, supra* note 2 (holding that the requirement of strip searches is within the discretion of prison officials, but that the use of anal inspections must be more circumscribed—"It can also be said that the institution has an interest in controlling the intra-prison flow of contraband as well as to protect the safety of prison guards and other inmates." *Id.* at 900.); *Ferguson v. Cardwell,* 392 F.Supp. 750 (D.Ariz.1975) (constitutionality of taking blood samples from prisoners suspected of using drugs); *Gettleman v. Werner,* 377 F.Supp.

drugs within a specific prison, and also as to the particular prisoner's experience with, and ability to obtain, drugs. No such information appeared of record. Perhaps the lower court had some private knowledge on these matters. However, the "actual private knowledge by the judge is no sufficient ground for taking judicial notice of a fact as a basis for a finding  .  .  . " McCormick, *supra* at 761.

Judge Price insists that "[j]udicial notice plays no part either in [the] conclusion [that appellant brought drugs into prison] or in the acceptance of the fact that drugs are more readily available on the street." Judge Price's Opinion at 88. As I understand this statement, Judge Price is saying that the finding "that drugs are more readily available on the street [than in prison]" is based in "no part" on judicial notice, but is an inference from a fact of record. The only fact of record that Judge Price cites, however, is the testimony that the prison follows a strict routine of strip searches of all returning prisoners in order to keep contraband out of the prison. Judge Price's reliance on this routine is surprising, considering that he has already argued that appellant could easily have smuggled drugs in despite the routine. If appellant could have done so, then so could other prisoners, from whom appellant could then have procured drugs inside the prison. Moreover, even accepted, Judge Price's inference takes no account of the possibility that drugs were made available in the prison by prison employees not subject to the strip search requirement. *See Gettleman v. Werner, supra* note 3. There is nothing in the record to show what safeguards, if any, were in effect to

445, 447 (W.D.Pa.1974) (dismissing a 42 U.S.C.A. § 1983 action by a teacher-employee who was strip searched on a prison visit—"Smuggling contraband in and out of the prison is and has been a serious problem. Participants have been employees and guards as well as inmates.") *And see* The New York Times, June 9, 1977, "28 Indicted in Plot to Take Contraband into Brooklyn Jail"—"21 current and former Department of Correction employees and 7 confederates were indicted and arrested on charges of taking bribes to smuggle narcotics  .  .  .  into the Brooklyn House of Detention for use by inmates."; The Phila. Evening Bulletin, August 5, 1977, "Guard Arrested on 'Pot' Charge."

prevent such persons from trafficking in drugs within the prison.

Appellant's conviction of bringing contraband into prison is based either wholly on inferences, suspicion, and conjecture, which are insufficient bases, *Commonwealth v. Townsend,* 428 Pa. 281, 237 A.2d 192 (1968), or on improper judicial notice. It should not stand.

JACOBS, President Judge, and HOFFMAN, J., join in this opinion.