**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Nathan DUNLAP, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 4, 2003.
Filed March 24, 2004.

Karl Baker, Philadelphia, for appellant.

Catherine L. Marshall, Asst. Dist. Atty., Philadelphia, for Com., appellee.

BEFORE: DEL SOLE, P.J.,
JOHNSON, HUDOCK, FORD ELLIOTT,
JOYCE, STEVENS, MUSMANNO,
TODD, and KLEIN, JJ.

OPINION BY KLEIN, J.:

¶ 1 This appeal presents the issue of whether there was probable cause to search appellant Nathan Dunlap, who was found in possession of illegal drugs. The matter was tried before Judge Wendy Pew in the Philadelphia Municipal Court, who found him guilty. Dunlap filed a petition for a writ of *certiorari* in the common pleas court, and Judge Joyce S. Keane affirmed the guilty verdict and judgment of sentence. The sole issue before Judge Keane was whether Judge Pew erred in denying the motion to suppress evidence at the municipal court proceedings. Dunlap has raised the same issue in this appeal. We affirm Judge Pew's denial of the motion to suppress and Judge Keane's denial of the writ of *certiorari.*

¶ 2 Despite Dunlap's arguments to the contrary, *Commonwealth v. Banks,* 540 Pa. 453, 658 A.2d 752 (1995), does not require reversal. In *Banks,* the Pennsylvania Supreme Court held that, absent other factors, the mere fact that a regular police officer sees a transaction on the street in which money passes from one person to the other and some unknown objects are given in return does not amount to probable cause to arrest for a drug transaction, even where the suspect has fled on seeing the police. 658 A.2d at 753.

¶ 3 The facts in this case present a stronger case for finding probable cause than those in *Banks.* The key differences are:

(a) an experienced narcotics officer makes the observations;

(b) the transaction takes place in what the officer knows from personal, professional experience as well as reputation to be a high drug-crime area; and

(c) based on his or her training, experience as an officer and knowledge of the area, the officer reasonably concludes that he or she probably witnessed a drug transaction.

¶ 4 We also reaffirm our decision in *Commonwealth v. Nobalez,* 805 A.2d 598 (Pa.Super.2002), *appeal denied* 575 Pa. 692, 835 A.2d 709 (2003), and *Commonwealth v. Stroud,* 699 A.2d 1305 (Pa.Super.1997).

¶ 5 The evidence in this case, as testified to by Officer Devlin of the Philadelphia Police Department, was that on May 4, 2001, at about 10:55 a.m., he and his partner were working in plainclothes surveillance at 2700 North Warnock Street in Philadelphia, which is at the corner of Warnock and Somerset Streets. Devlin observed a man standing at that same corner. He saw Dunlap approach the man, engage in a brief conversation, and then exchange money with the man and receive "small objects" in return. Dunlap walked away. Dunlap's description was sent out, and another police officer stopped him and

recovered three packets that tests showed contained crack cocaine.

¶ 6 At the time of the surveillance, Devlin had been a police officer for almost five years and a member of the drug strike force for nine months. Devlin had participated in "about fifteen or twenty" narcotics arrests in that area. He described 2700 North Warnock as a residential area with a high incidence of drugs and crime. Based on his experience and knowledge, he believed that what he had witnessed was a narcotics transaction.

¶ 7 It is true that the question of whether probable cause exists in given circumstances is so fact-sensitive that it is difficult to extrapolate from other cases. Our review on appeal is limited to only the Commonwealth's evidence, although in this case, there was no evidence presented by the defendant. Where the record supports the court's findings, we are bound by them and may reverse only if the legal conclusions are erroneous. *Commonwealth v. Colon,* 777 A.2d 1097 (Pa.Super.2001). As to the factors to be considered, the *Colon* court considered the factors suggested in *Commonwealth v. Lawson,* 454 Pa. 23, 309 A.2d 391 (1973):

> "All of the detailed facts and circumstances must be considered. The time is important; the street location is important; the use of a street for commercial transactions is important; the number of such transactions is important; the place where the small items were kept by one of the sellers is important, the movements and manners of the parties are important."
>
> * * * * *
>
> It is difficult to isolate any one fact or circumstance and assign to it a given weight. If any one of the facts and circumstances, which we have detailed, were missing, the necessary conclusion of probable cause might not be allow-

able. Every commercial transaction between citizens on a street corner when unidentified property is involved does not give rise to probable cause for an arrest.

777 A.2d at 1101 (quoting *Lawson,* 309 A.2d at 394).

¶ 8 The *Lawson* factors, though specific, carry different relative weight and importance depending on the circumstances of a given case. While recognizing that the facts of this case place it somewhere *between* the Supreme Court's rulings in *Banks* and *Lawson* and our decisions in *Nobalez* and *Stroud,* the circumstances in this case are closer to the latter cases than the former.

¶ 9 We also believe the trial judge permissibly accepted Officer Devlin's characterization of 2700 North Warnock as a residential area with a high incidence of drugs and crime. We hesitate to second-guess trial judges when they make such fact-intensive determinations since they are in a far better position to assess the credibility of the witnesses.

¶ 10 Here, although the officer had only been on the drug strike force for nine months, he had been a police officer for almost five years. Therefore, he combined specialized drug training with several years of beat work, which frequently deals with drug transactions. While this officer *himself* only participated in fifteen to twenty arrests in this area, the trial court was entitled to credit Officer Devlin's assertion that this was a high drug trafficking area.

¶ 11 These facts are similar to those in *Nobalez,* where we also found the arresting officer possessed probable cause in light of his personal knowledge and professional experience. They are also similar to *Stroud.* In that case, we found probable cause where an experienced narcotics offi-

cer, using binoculars, twice observed the defendant, on a well-lit corner at night, exchange small objects retrieved from his shoe for cash. As in *Stroud* and *Nobalez,* the additional factors take this case out from under *Banks'* shadow.

¶ 12 Certainly this case is not identical to either *Nobalez* or *Stroud.* In this case, the transaction took place in the daytime, the record does not indicate from where Dunlap got the items he gave to the buyer, and nobody fled the scene. And the officer in *Nobalez* had nine years on the force and three years in the area, and made thirty arrests in the area rather than fifteen to twenty. And in *Stroud* the officer had more experience and there were two acts. However, none of this means the trial court should have discounted the officer's testimony that he had an honest belief that he was witnessing a drug deal and that this conclusion was reasonable. Rather, we must view the episode through the lens of a trained and experienced law officer. When we do that, it is apparent that the suppression court properly assessed the testimony and refused the suppression motion.

¶ 13 We recognize that in *Banks,* the Supreme Court gave force to a statement from *Lawson:* "Every commercial transaction between citizens on a street corner where unidentified property is involved, does not give rise to probable cause for an arrest." 658 A.2d at 753. But the *Banks* Court did not stop there. It then went on to state that an additional factor or factors must be present to constitute probable cause. *Id.*

¶ 14 In this case, there are two significant, additional factors. First, the testimony came from an experienced officer *who had been on the drug strike force for nine months.* Second, the transaction took place in a high drug area in which Devlin *himself* had participated in fifteen to twenty drug arrests. These facts are similar to those found in *Nobalez,* where we also found the arresting officer possessed probable cause in light of his personal knowledge and professional experience. *See also Stroud.*

¶ 15 We think the judges below reasonably rejected the alternative that this was merely a person giving change or making a sale of cigarettes or M & M's or something equally innocuous. The municipal court judge, who had the opportunity to observe the witnesses and judge all of the circumstances, and the common pleas court judge, who affirmed the municipal court judge's decision, both held that there was probable cause to believe there was a drug transaction. While recognizing that this is a close case, it was well within the municipal court judge's discretion to draw the conclusion that in this neighborhood, with these observations, and considering the experience of the police officer, the officers had probable cause to believe that a drug transaction was being carried out.

¶ 16 Dunlap points to three cases where this court found probable cause under similar circumstances, but the Pennsylvania Supreme Court reversed this court's decision *per curiam.* Those *per curiam* reversals are *Commonwealth v. Albino,* 541 Pa. 424, 664 A.2d 84 (1995), *Commonwealth v. Carter,* 543 Pa. 510, 673 A.2d 864 (1996), and *Commonwealth v. Lopez,* 543 Pa. 321, 671 A.2d 224 (1996). However, the orders in those cases are not binding precedent. They do not recite the facts or contexts of the respective cases.

¶ 17 As we explained in *Nobalez,* the Supreme Court's *per curiam* reversals carried nothing more than law-of-the-case effect. *Commonwealth v. Tilghman,* 543 Pa. 578, 673 A.2d 898 (1996); *Commonwealth v. Stroud,* 699 A.2d 1305, 1308 .n. 2 (Pa.Super.1997). In *Tilghman,* the trial

court had granted parole to defendants whose aggregate sentences exceeded two years. The Commonwealth appealed, challenging whether the common pleas court or the parole board had jurisdiction to consider the parole petitions. 673 A.2d at 900–01. In an earlier case, *Commonwealth v. Harris*, 423 Pa.Super. 190, 620 A.2d 1175 (1993), this court had held that if the aggregate sentences amount to two years or more, jurisdiction lies with the parole board. In a third case, *Abraham v. Department of Corrections of Pennsylvania*, 150 Pa.Cmwlth. 81, 615 A.2d 814 (1992), *aff'd per curiam*, 535 Pa. 122, 634 A.2d 214 (1993), the Supreme Court affirmed the Commonwealth Court's contrary determination in a short, *per curiam* order that offered no explanation.

¶ 18 The *Tilghman* defendants contended that without saying so, the Supreme Court's order in *Abraham* had overruled this court's decision in *Harris*. The Supreme Court disagreed, and held: "[W]e did not *sub silentio* overrule *Harris* by our *per curiam* order of affirmance in *Abraham*." *Tilghman*, 673 A.2d at 905. The Court explained that unless the Court's order affirms on the basis of the opinion below, the lower tribunal's opinion is neither approved nor disapproved. The Court simply is disposing of that case only, with no more than law of the case effect. *Id.* at 904.

¶ 19 Although *Tilghman* dealt with an affirmance rather than a reversal, its language points the way in this case. In light of the Supreme Court's explanation, we can see no meaningful distinction between the two dispositions in terms of precedential weight. *See also Stroud*, 699 A.2d at 1308 n. 2. Therefore, the *per curiam* reversals do not constrain our decision.

¶ 20 We conclude that, *Banks* notwithstanding, there was sufficient probable cause to support the seizure in this case.

The trial court and the *certiorari* court had available Officer Devlin's testimony that he had seen Dunlap and the other man exchange money for small objects in a neighborhood that Dunlap knew from his own professional experience was a high drug-crime area. As a narcotics officer with five years general experience and nine months' specialized drug enforcement experience, Officer Devlin concluded that he had observed a drug transaction. There were no commercial vendors or stores in the area, making it unlikely that this was a legitimate transaction. This stands in stark contrast with the officer in *Banks*, who was described simply as having "experience." *Banks*, 658 A.2d at 754 (Castille, J., dissenting). We agree with the lower courts that these factors together were sufficient to provide probable cause.

¶ 21 Judgment of sentence affirmed.

¶ 22 JOHNSON, J., files a Dissenting Opinion which is joined by DEL SOLE, P.J., and MUSMANNO, TODD, JJ.

DISSENTING OPINION BY JOHNSON, J.:

¶ 1 I believe the Majority has misapplied governing caselaw in upholding the lower court's refusal to suppress evidence obtained pursuant to a search for which the investigating officer lacked probable cause. Thus, I respectfully dissent.

¶ 2 The question whether probable cause exists in a given circumstance is so fact-intensive that well-settled legal principles in themselves offer cold comfort. Nowhere is this more plainly illustrated than in *Commonwealth v. Lawson*, which calls, in cases like the one before us, for consideration of circumstantial factors such as the time of the observed transaction, the street location, the commercial or residential character of the street location, the

number of suspicious transactions observed, how the suspect stored the objects, and the movements and mannerisms of the parties. *See* 454 Pa. 23, 309 A.2d 391, 394 (1973). This decision's continuing currency is beyond dispute, as evinced by its recurring citation in our own opinions and those of our Supreme Court. *See, e.g., Commonwealth v. Banks,* 540 Pa. 453, 658 A.2d 752, 752–53 (1995); *Commonwealth v. Colon,* 777 A.2d 1097, 1100–02 (Pa.Super.2001); *Commonwealth v. Stroud,* 699 A.2d 1305, 1308–09 (Pa.Super.1997). This ongoing reliance on *Lawson* reinforces the fact that our inquiry is not amenable to fixed principles or formulae. *See Lawson,* 309 A.2d at 394. Thus, in determining whether probable cause sufficient to support a search was present in a given case, we must consider "[a]ll of the detailed facts and circumstances," *id.,* not as through the eyes of an "average citizen" but rather as through the eyes of a trained law-enforcement officer. *See Commonwealth v. Agnew,* 411 Pa.Super. 63, 600 A.2d 1265, 1271–72 (1991).

¶ 3 The contribution of an officer's experience in this context is a moving target. Its does not, as the Majority suggests, supplement directly the six factors designated in *Lawson.* Rather, it provides the court with a lens through which to *view* those six factors. Reading *Lawson* for the substance of our inquiry, and *Agnew* for our standard of review, I would find that the officer's experience governs the manner of the examination called for by *Lawson,* but cannot *of itself* rise to probable cause. Thus, it is the totality of the circumstances, especially those six factors identified in *Lawson,* as *perceived* by an officer (rather than a layperson) that we must consider.

¶ 4 The Majority, however, would flatten this two-layered analysis into a single stratum where an officer's experience, rather

than a lens through which to view a given circumstance's fit with the *Lawson* factors is, in fact, by far the most important single factor: a seventh *Lawson* factor previously unrecognized as such by Pennsylvania law. Thus, under the Majority's analysis, police officers with virtually any experience at all can bootstrap a "showing" of probable cause merely by asserting that they had an "honest" and "reasonable" belief that criminal activity was afoot. In this way, the Majority abdicates this Court's responsibility to assess reasonableness independently, preferring to rely on little more than a police officer's good faith.

¶ 5 This analysis amounts to a reformation of existing law. "The rule of *stare decisis* declares that for the sake of certainty, a conclusion reached in one case should be applied to those which follow, if the facts are substantially the same . . . ." *Commonwealth v. Tilghman,* 543 Pa. 578, 673 A.2d 898, 903 n. 9 (1996). The Majority's ruling in this case disregards entirely a run of precedent entailing circumstances uncannily similar to those at bar. In reaching a disposition disharmonious with those prior holdings, it instead relies on cases that are readily distinguishable from the case before us.

¶ 6 The Majority relies in particular on *Commonwealth v. Nobalez,* 805 A.2d 598 (Pa.Super.2002), *appeal denied,* 575 Pa. 692, 835 A.2d 709 (2003), and by its lights endeavors to distinguish the case *sub judice* from *Banks,* 658 A.2d 752, which I believe shares more common elements with the present case. Majority Opinion at 675, 677. Moreover, the Majority declines to address *Commonwealth v. Malson,* 434 Pa.Super. 155, 642 A.2d 520 (1994), *Agnew,* 600 A.2d 1265, and others properly raised and analyzed by Dunlap, which urge this Court to rule in favor of suppression. *En Banc* Brief for Appellant at 10–12, 15–18, 25–28.

¶ 7 In *Banks,* our Supreme Court reversed the trial court's order denying the defendant's motion to suppress evidence. The Court observed that "[e]very commercial transaction between citizens on a street corner when unidentified property is involved does not give rise to probable cause . . . ." *Banks,* 658 A.2d at 753 (internal quotation marks omitted). The Court, noting that "additional factors" were required to support probable cause, found the following circumstances dispositive in favor of suppression:

> This is *not* a case where a trained narcotics officer observed either drugs or containers commonly known to hold drugs being exchanged. This is *not* a case where the police observed multiple, complex, suspicious transactions. And this is *not* a case in which the police officer was responding to a citizen's complaint or to an informant's tip. This is simply a case where a police officer chanced upon a single, isolated exchange of currency for some unidentified item or items, taking place on a public street corner at midday, and where appellant fled when approached by the officer.

*Id.* (emphasis in original; citations omitted). In the case *sub judice,* as in *Banks,* the police officer was unable to identify the containers he observed being exchanged, there were not multiple, complex, suspicious transactions, and the officer was not responding to a tip. Similarly, in this case a police officer observed a single, isolated exchange of currency for unidentified items taking place on a public street corner at midday. Significantly, Dunlap did not flee, as did the appellant in *Banks.*

¶ 8 Subverting its own putative reliance on *Lawson,* Majority Opinion at 676 (quoting *Lawson,* 309 A.2d at 394 ("If any of the [six] facts and circumstances, which we have detailed, were missing, the necessary conclusion of probable cause might not be allowable.")), the Majority distinguishes *Banks* from the instant case by reference to the following "key differences:"

> (a) an experienced narcotics officer makes the observations;
>
> (b) the transaction takes place in what the officer knows from personal, professional experience to be a high drug-crime area; and
>
> (c) based on his or her experience as an officer and knowledge of the area, the officer reasonably concludes that he or she probably witnessed a drug transaction.

Majority Opinion at 675. As previously stated, an officer's experience merely provides the lens through which a court must evaluate the sufficiency of an officer's observations to create probable cause to search a suspect. Thus, on the Majority's excerpted interpretation, only one of the *Lawson* factors credibly emerges to weigh in favor of a finding of probable cause, while others militate strongly against it.

¶ 9 This is especially important in that even in *Nobalez,* arguably our least demanding decision as to what is required to establish probable cause to support a search based on a street transaction, we couched our decision in the "totality of the circumstances" that the more demanding *Banks* requires courts to consider when weighing a motion to suppress. *See* 658 A.2d at 752–53; *Nobalez,* 805 A.2d at 600 ("Where additional factors are present, probable cause *may* arise." (emphasis added)). Thus, in *Nobalez* this Court found suppression unnecessary in light of at least two factors: the nature of the neighborhood *and* the flight of the buyer upon the officer's approach. *See* 805 A.2d at 600–01. Reinforcing, but not adding to, these factors was the officer's experience, which exceeded significantly the experience of the officer in the instant case.

¶ 10 Even if, *arguendo*, the additional "factors" cited by the Majority distinguish this case from *Banks*, other cases preclude affirming the trial court's refusal to suppress. The Majority cites the transaction's occurrence in a "high drug area" and its observation by "an experienced officer *who had been on the drug strike force for nine months*" and who had participated in fifteen to twenty drug arrests in that neighborhood. Majority Opinion at 677 (emphasis in original). Again, only one of these factors, the character of the neighborhood, actually constitutes a "factor" under *Lawson*. The other two references hearken directly to the officer's experience, and therefore can serve only to focus our examination of the one *Lawson* factor on which the Majority's holding ultimately relies.

¶ 11 In *Malson*, under circumstances strikingly similar to those before us, this Court affirmed the trial court's order suppressing evidence where, in a drug trafficking area, a police officer of comparable experience observed a single suspicious transaction. *See* 642 A.2d at 523. We held that "an exchange of some unknown items between citizens in a public place, *even a place known to be frequented by drug traffickers*, does not, without more, establish probable cause to arrest those citizens." *Id.* (emphasis added). Moreover, the police officer in that case had seven years' experience *in the neighborhood* (as opposed to the instant officer's five years' experience *as a police officer*) and had made ten previous arrests "in that precise location." *See id.* Thus, a more compelling variation of *precisely the same factor* relied upon by the Majority failed to sway us in *Malson*. It should not sway us now.

¶ 12 In *Agnew*, an officer trained in narcotics investigation, who had participated in *hundreds* of controlled substance arrests, set up surveillance in a "high drug activity area." 600 A.2d at 1270. There, he observed suspicious activity at night in a parking lot that "provide[d] a haven for trafficking activity," where the officer previously had observed "numerous illegal drug transactions." *Id.* The trial court had denied suppression because it found that the "time of day" (evening), the "locus" ("a haven for trafficking activity"), the race of the occupants of the car (three white men driving around in a predominately black and Hispanic neighborhood), the observation of black men approaching the car, the gesture of one of these men in reaching into the car through the passenger window, and the car's immediate exit from the parking lot, gave the officer probable cause to believe that he had witnessed a drug transaction. *See id.* at 1272. This Court found no probable cause, and thus reversed the trial court's order denying suppression, because the police had no prior information or reason to believe appellants would be purchasing narcotics, the parties were not known drug dealers, and the police did not see the actual exchange of objects. *See id.* at 1273–74.

¶ 13 Although in that case the exchange, if any, took place out of the officer's view, the other circumstances, as well as the observing officer's experience—hundreds of narcotics arrests in *Agnew* versus fifteen to twenty in the instant case—made the totality of circumstances far more suggestive of illegal conduct than in the case before us. Even so, we found insufficient probable cause, noting that "one of the prices we have to pay for the security which the Fourth Amendment bestows upon us is the risk that an occasional guilty party will escape." *Id.* at 1274 (modifications and internal quotation marks omitted); *see also Commonwealth v. Greber*, 478 Pa. 63, 385 A.2d 1313, 1316 (1978) ("While the officer's curiosity might have been aroused by the action that was

witnessed, and while he might have had a hunch that illegal contraband was involved, that is not sufficient" to support probable cause, where the transaction entails a single exchange—*even given fixed observation in a high crime area.*).

¶ 14 The Majority, however, fails even to acknowledge these cases, instead relying exclusively on *Nobalez* and *Stroud.* Majority Opinion at 677. Both cases are distinguishable. In *Stroud,* at least two clearly related suspicious acts occurred at night in rapid succession, the police were relying on a tip, the observing officer had over twenty-three years' experience on the force, eight of them in narcotics, and the suspicious items were withdrawn from the suspect's shoe. *See Stroud,* 699 A.2d at 1305. The officer in the instant case, by contrast, had only a small fraction of the officer's experience in *Stroud,* and only one mid-day transaction featuring no suspicious behavior (beyond the exchange of currency for an unidentified object, which *Banks* unequivocally held is insufficient in itself to create probable cause, *see* 658 A.2d at 753) from which to form what the Majority calls the officer's "reasonable" conclusion and "honest belief." Majority Opinion at 677. Indeed, the Majority fails to indicate what, beyond his "experience" and the character of the neighborhood, even created the officer's "honest belief," or what made that belief "reasonable."

¶ 15 In *Nobalez,* this Court upheld the trial court's order denying suppression. It distinguished *Banks,* by noting as "sufficient additional factors," that the arresting officer was "a highly experienced narcotics officer." *Nobalez,* 805 A.2d at 600. The officer in question had nine years on the force and three years working in the same high-drug area where he had observed the exchange in question. *See id.* at 599. Moreover, he had made thirty narcotics arrests within a one-block radius of the suspicious activity he observed, including ten narcotics arrests on the same block. *See id.* As in *Banks,* the buyer fled when the police were seen moving in. *See id.* at 600. We acknowledged that flight alone does not permit custodial detentions or searches, *cf. Banks,* 658 A.2d at 753, but indicated that it properly contributed to the officer's assessment of probable cause in that case. *See Nobalez,* 805 A.2d at 600.

¶ 16 Thus, the totality of the circumstances presented in *Nobalez* was more suggestive than the totality of the circumstances in the instant case: the police officer had considerably more experience than the officer in the instant case (between three and nine years in narcotics versus only nine months in the case before us); and the buyer in the observed transaction fled when the officer approached. The present case featured no such suspicious behavior. Moreover, the more apposite circumstances in *Malson* and *Agnew,* which urge a converse result, only underscore the understatement implicit in the Majority's observation that "this case is not identical to either *Nobalez* or *Stroud.*" Majority Opinion at 677.

¶ 17 Nowhere in *Nobalez* did this Court speak in such broad terms as to confer upon only one of the six *Lawson* criteria conclusive effect when facing motions to suppress evidence. *Cf. Lawson,* 309 A.2d at 394. In *Lawson,* our Supreme Court, in enumerating its six factors, noted that "[i]t is difficult to isolate any one fact or circumstance and assign to it a given weight." 309 A.2d at 394. In its disposition of the instant case, however, the Majority effectively does just that: elevating one of the *Lawson* criteria above the rest, and creating a *per se* rule against suppression where only that criterion is satisfied.

¶ 18 I am especially concerned by the Majority's emphasis on the officer's expe-

rience as a surrogate for his or her first-hand observations of actions and circumstances supporting probable cause. In prior cases, we found no probable cause even where more experienced officers observed manifestly more suspicious activity. *See Agnew,* 600 A.2d at 1270 (suppressing evidence even though the officer had participated in hundreds of arrests); *Malson,* 642 A.2d at 523 (suppressing despite officer's seven years' experience in the neighborhood, including ten arrests in the precise location where he observed the suspicious conduct). The paucity of "specific and articulable facts" supporting the officer's suspicion in this case, would not even support "reasonable suspicion" sufficient to support an investigatory detention, *see Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), let alone probable cause to seize and search a suspect. *See Commonwealth v. DeWitt,* 530 Pa. 299, 608 A.2d 1030 (1992) (finding no reasonable suspicion to support a *Terry* stop, where suspects sitting in a car parked illegally with the dome light on late at night turned off the light, moved as if to hide something, and attempted to drive away as soon as a police officer approached).

¶ 19 Contrary to the Majority's assertion that the facts of this case situate it "somewhere *between* the Supreme Court's rulings in *Banks* and *Lawson* and our decisions in *Nobalez* and *Stroud,*" Majority Opinion at 676, its ruling lies far from any middleground, since it formalizes the deliberately fact-dependent inquiry called for by *Nobalez* and all but eviscerates *Lawson,* which requires painstaking consideration of six or more factors. The "different relative weight and importance" these circumstances purportedly carry, Majority Opinion at 676, fail to explain why facts that align squarely with *Banks* should be treated as if they align with *Stroud* and especially *Nobalez.* It is only more strik-

ing given the four-square relevance of our decisions in *Malson* and *Agnew,* which the Majority does not even discuss.

¶ 20 We are left with a holding that appears to authorize any police officer with a few years, or perhaps only a few months, on the beat to search anyone who exchanges an unidentified item for cash on the street whom he *honestly, reasonably* believes is engaged in criminal activity. This rule takes no account of whether the officer can provide specific articulable facts (aside from his own subjective perception of the neighborhood) to support his "honest," "reasonable belief." The Pennsylvania and United States Constitutions and thirty years of post-*Lawson* precedent have labored mightily to protect the people against law enforcement officers operating with this particular brand of *carte blanche.* Indeed, *Terry v. Ohio* requires police to show more before they are permitted to do less than the officer showed or did in the instant case. I cannot subscribe to such a departure from Pennsylvania and United States law, especially where matters of constitutional import are at stake.

¶ 21 I find further evidence that the Majority has determined to grant the police a degree of deference wholly unprecedented in this Commonwealth in its suggestion that the trial court, and apparently this Court, may take judicial notice of a an officer's experience to shore up his "honest," "reasonable" belief where the *Lawson* factors fail to do so. The Majority notes in support of its holding the officer's "several years of beat work, which frequently deals with drug transactions." Majority Opinion at 676. Apparently, the Majority would grant the officer *carte blanche* not only in virtue of the experience the Majority knows he has, but also in virtue of that experience it *supposes* he has. There is simply no precedent for taking judicial notice of something as important as the rele-

vant experience the investigating officer brings to bear on his observations. *See Commonwealth v. Brown*, 839 A.2d 433, (Pa.Super.2003) ("Judicial notice allows the trial court to accept into evidence indisputable facts to avoid the formality of introducing evidence to prove an incontestable issue. However, the facts must be of a matter of common knowledge and derived from reliable sources whose accuracy cannot reasonably be questioned." (citation and quotation marks omitted)); *see also Commonwealth v. Coleman*, 254 Pa.Super. 82, 385 A.2d 535 (1978) (finding improper a trial judge's reliance on the proposition "that drugs are more readily available on the street" than in prison, where that ruling appeared to be a matter of judicial notice). I would neither credit such speculation nor employ judicial notice in this fashion.

¶ 22 The foregoing analyses, in themselves, compel reversal of the trial court's order denying suppression and consequently my dissent. Nonetheless, the parties and the Majority address rigorously and at length the precedential effect, if any, of our Supreme Court's reversals, in three prior cases, of orders denying suppression of evidence under analogous circumstances. *See Commonwealth v. Carter (Carter I)*, 445 Pa.Super.646, 665 A.2d 1298 (1995) (table); *Commonwealth v. Lopez (Lopez I)*, 444 Pa.Super.441, 664 A.2d 154 (1995); *Commonwealth v. Albino (Albino I)*, 438 Pa.Super.562, 652 A.2d 953 (Pa.Super.1995). Our Supreme Court reversed our decisions in all three of those cases *per curiam* simply by citing *Banks*, 658 A.2d at 755, without explanation or analysis. *See Commonwealth v. Carter (Carter II)*, 543 Pa.510, 673 A.2d 864 (1996); *Commonwealth v. Lopez (Lopez II)*, 543 Pa.321, 671 A.2d 224 (1996); *Commonwealth v. Albino (Albino II)*, 541 Pa. 424, 664 A.2d 84 (1995), *cert. denied sub nom Pennsylvania v. Albino*, 516 U.S. 1047, 116 S.Ct. 709, 133

L.Ed.2d 664 (1996). I disagree with the Majority that such summary dispositions have no precedential effect whatever. Majority Opinion at 677–78. Moreover, the three cases in question further persuade me that this case requires reversal.

¶ 23 We must draw a distinction between those cases where our Supreme Court affirms or reverses decisions of this Court entirely without comment, *see, e.g., Abraham v. Dep't of Corr. Of Pa.*, 535 Pa. 122, 634 A.2d 214 (1993) (*affirming per curiam* without opinion), and those where it does so by adverting to another of its own decisions. *See, e.g., Carter II, Lopez II, Albino II, supra.* In the latter circumstance, I believe, this Court should construe that disposition to reflect the Supreme Court's opinion that the facts in the underlying cases compelled suppression of the evidence under the undisturbed rationale of the case cited. Notwithstanding the Majority's comments to the contrary, *Tilghman*, 673 A.2d 898, does not preclude this analysis.

¶ 24 Our Supreme Court knows well how to affirm without any citation at all. *See Abraham, supra.* Thus, when it affirms *per curiam* by reference to one of its prior decisions we would be remiss to disregard such a citation as meaningless, or as expressing no opinion as to the proper resolution of the matter before it. The manifest limitations of such cursory dispositions do not support the Majority's ruling that absolutely no analytic value inheres in these decisions. If that were the Supreme Court's intent, it could, as in *Abraham*, affirm or reverse the decision appealed and be done with it.

¶ 25 This also requires me to express my disagreement with *Nobalez*, 805 A.2d at 601–02, to the extent it holds to the contrary. *Cf. Stroud*, 699 A.2d at 1308 n. 2 (finding that the *per curiam* holding in

*Carter II* carried no precedential weight, but relying on the statement of the facts in Justice Castille's dissent to that case to note why the *Carter* circumstances were distinguishable from those in *Stroud*). Both *Nobalez* and *Stroud* rely on *Tilghman* for the proposition that "[t]he Supreme Court's *per curiam* reversals carr[y] nothing more than law of the case effect." *See Nobalez,* 805 A.2d at 601. The interpretation of *Tilghman* found in *Nobalez, Stroud,* and the Majority's opinion in the instant case broadens that decision beyond its apparent terms.

¶ 26 In *Tilghman,* the Supreme Court considered only whether a *per curiam* affirmance or reversal without opinion had the effect of endorsing or rejecting the rationale employed by the court below. *See* 673 A.2d at 903–04. *Tilghman* simply did not address the question implicitly raised by the appellant and explicitly answered in the negative by the Majority: *Did the Supreme Court, in citing* per curiam *to* Banks *in three decisions reversing orders denying suppression of evidence, decide effectively that in the circumstances of those three cases* Banks *plainly required suppression of the evidence in question? En Banc* Brief for Appellant at 9–10; Majority Opinion at 677–78.

¶ 27 In *Albino I,* the officer saw one transaction involving a "purse" stored inside the waistband of the suspect's pants. *See* 652 A.2d at 954. The officer had five years' experience on the force, and had, "on more than 100 occasions, observed the sale of controlled substances on the very corner on which he observed" the suspect transaction. *See id.* at 954 n. 2. This Court reversed the trial court's order suppressing the evidence, but our Supreme Court reinstated the trial court's ruling by citation to *Banks. See Albino II,* 664 A.2d 84. In *Lopez I,* police observed the suspect conduct two exchanges rather than

one, and saw a third event that further inculpated the suspect. *See* 664 A.2d at 155. Moreover, the police officer in question had seven years' experience in the area where he had observed the transactions. Although these circumstances were more incriminating than those in the case at bar, our Supreme Court summarily reversed this Court's order reversing the trial court's suppression of the evidence. *Lopez II,* 671 A.2d 224; *see also Lopez I,* 664 A.2d at 158–159 (Johnson, J., dissenting, arguing from *Malson* and *Agnew* that the trial court did not err in ordering suppression).

¶ 28 I need not disagree with the Majority's observation that *"per curiam* reversals do not constrain our decision,"* Majority Opinion at 678, to find that our Supreme Court's reversals in *Carter II, Albino II,* and *Lopez II suggest* that the Court believed that its decision in *Banks* required suppression on the facts of those cases, even though at least two of those cases featured the observations of experienced officers in high crime areas. To read those reversals otherwise would be to ignore the Supreme Court's citations entirely.

¶ 29 For all the foregoing reasons, I would reverse the trial court's order denying Dunlap's motion for suppression. Thus, I respectfully dissent from the Majority's contrary disposition.

¶ 30 DEL SOLE, P.J., MUSMANNO, and TODD, JJ., join.