COMMONWEALTH of Pennsylvania, Appellant,

v.

Edgar STROUD, Appellee.

Superior Court of Pennsylvania.

Argued May 14, 1997.
Filed Aug. 26, 1997.

Lawrence J. Goode, Philadelphia, for Commonwealth, Appellant.

Joseph C. Santaguida, Philadelphia, for Appellee.

Before BECK and HUDOCK, JJ., and CERCONE, P.J.E.

HUDOCK, Judge:

In this appeal the Commonwealth asserts the trial court erred in granting Appellee's motion to suppress evidence.[1] We affirm in part and reverse and remand in part.

The standard of review employed by an appellate court when reviewing the grant of a suppression motion has been summarized by our Supreme Court:

> We begin by noting that where a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible. Pa. R.Crim.P. 323(h). *See Commonwealth v. Iannaccio*, 505 Pa. 414, 480 A.2d 966 (1984), *cert. denied*, 474 U.S. 830, 106 S.Ct. 96, 88 L.Ed.2d 78 (1985). In reviewing the ruling of a suppression court, our task is to determine whether the factual findings are supported by the record. *Commonwealth v. Monarch*, 510 Pa. 138, 147, 507 A.2d 74, 78 (1986). If so, we are bound by those findings. *Commonwealth v. James*, 506 Pa. 526, 533, 486 A.2d 376, 379 (1985). Where, as here, it is the Commonwealth who is appealing the decision of the suppression court, we must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted. *Commonwealth v. James*, 506 Pa. at 532–33, 486 A.2d at 379; *Commonwealth v. Hamlin*, 503 Pa. 210, 216, 469 A.2d 137, 139 (1983).

*Commonwealth v. DeWitt*, 530 Pa. 299, 301–02, 608 A.2d 1030, 1031 (1992) (footnote omitted). Moreover, if the evidence when so viewed supports the factual findings of the suppression court, this Court will reverse only if there is an error in the legal conclusions drawn from those findings. *Commonwealth v. Reddix*, 355 Pa.Super. 514, 516–18, 513 A.2d 1041, 1042 (1986).

Based upon the testimony presented at the suppression hearing, the court made factual

---

1. The Commonwealth has certified in good faith that the court's order granting suppression of the evidence will terminate or substantially handicap its prosecution of the case. *See Commonwealth v. Dugger*, 506 Pa. 537, 546–47, 486 A.2d 382, 386 (1985).

findings which may be summarized as follows: On March 15, 1995, at about 7:20 p.m., Police Officer Joseph Santomieri, as a result of personal knowledge and information from neighbors that drugs were being sold in the 5600 block of Nelson Street, was conducting a surveillance of the block from an alley. During the course of this surveillance, Officer Santomieri observed Appellee, through binoculars at a distance of approximately forty feet. Appellee was standing on the east side of Nelson Street engaged in a conversation with two males who were standing on the opposite side of the street. A third male approached Appellee and engaged him in a conversation. The male handed Appellee U.S. currency, and Appellee took an object from his right shoe and handed it to the other male, who then turned and walked away. Officer Santomieri radioed his observations to his back-up team, which included Officers Robert Stott and Michael Kopecki.

A minute later Appellee went to a blue Oldsmobile which was parked on the west side of Nelson Street, opened the trunk with a key, and removed a brown paper bag. He took a clear plastic bag from the paper bag and removed from it objects which he put in his right shoe. He returned the plastic bag to the brown paper bag, placed the brown bag back into the trunk, closed the lid, remained standing in the street, and resumed his conversation with the males with whom he had previously been talking. About one minute later, another male approached Appellee, handed him currency and received from Appellee an object which he had removed from his shoe. Officer Santomieri radioed his back-up concerning what he had observed and asked them to come to his location.

Officer Santomieri could not identify the objects that Appellee had removed from his shoe and had handed to the two males or the objects which he removed from the plastic bag. When asked to describe the objects with as much detail as he could, he responded that the objects were so small that Appellee held them between his fingers and that Appellee's fingers were approximately a quarter of an inch apart.

After the second exchange, Appellee began walking north on Nelson Street. Officer Robert Stott, who was driving to Officer Santomieri's location, arrested Appellee and brought him back to Officer Santomieri, who identified him. Appellee was placed inside Officer Stott's vehicle. Officer Kopecki went to the Oldsmobile and returned with the brown paper bag. At the time of the hearing, Officer Santomieri had been a police officer for 23 1/2 years, and the last 8 1/2 years as a narcotics officer. Officer Santomieri testified that he knew the area to be a "high drug location" and that he believed that he had observed two drug transactions and, based on his experience, he believed that the small objects which were being passed were drug vials. N.T., 3/26/96, at 17.

Officer Stott testified that Officer Santomieri had radioed information to him concerning the alleged drug sales. He testified that he arrested Appellee who had three drug vials in his right shoe. Officer Kopecki's testimony was submitted by stipulation: Officer Santomieri was present when Officer Stott arrested Appellee and recovered the three vials and keys to the Oldsmobile. As a result of the information he had received from Officer Santomieri, he opened the trunk with the keys and looked behind the left rear taillight. He found a brown paper bag which contained two clear plastic bags. One of the bags contained forty clear plastic vials containing an off-white chunky substance. The other plastic bag contained forty vials containing a similar substance.

Appellee's cousin, Michael Keith Green, testified to a scenario which was completely at odds with the version of the three officers. The suppression court did not find his testimony credible. *See* Opinion, 7/3/96, at 1–4.

■ Our own review of the suppression transcript supports these factual findings. We add only that Officer Santomieri testified Appellee had crossed the street to talk to the two males but then walked back to his original position as the first male approached him. Given these facts, the suppression court determined that it did not have to

determine whether exigent circumstances existed to support the search of the automobile's trunk because it found that the police lacked probable cause to arrest Appellee. In so concluding, the suppression court found our Supreme Court's recent decision in *Commonwealth v. Banks*, 540 Pa. 453, 658 A.2d 752 (1995), to be so factually similar that it required this conclusion, and thus the suppression of the evidence seized. We do not find *Banks* to be controlling and further conclude that sufficient probable cause existed to place Appellee under arrest.[2]

■ When determining whether probable cause to arrest without a warrant exists, a totality of the circumstances test is employed. *Banks*, 658 A.2d at 752. The reviewing court must consider all factors presented to the officer and their total effect, each factor should not be viewed in isolation. *Commonwealth v. Burnside*, 425 Pa.Super 425, 430, 625 A.2d 678, 681 (1993) (citations omitted). In addition, probable cause does not deal with certainties—"[p]robable cause exists when criminality is one reasonable inference; it need not be the only, or even the most likely inference." *Id.* (emphasis omitted) Finally, as this Court has recently noted, the totality of the circumstances must be viewed as seen through the eyes of an experienced, trained police officer since, "[w]hen evaluating the totality of circumstances comprising reasonable suspicion or probable cause, [a reviewing court] will not ignore the ability of experienced police officers to draw deductions and inferences which other persons might not make." *In the Interest of B.C.*, 453 Pa.Super. 294, 303–04, 683 A.2d 919, 924 (1996).

In *Banks, supra*, at approximately 1:00 p.m., a police officer in a marked police car saw the appellant, who was standing on a street corner in Philadelphia, hand an object to an unknown female who, in turn, gave the appellant an undetermined amount of cash. As the police cruiser approached the appellant, he fled but was soon captured. As the result of a full arrest search, a bag containing cocaine was found on his person. In concluding that probable cause to effectuate a warrantless arrest did not exist, the high court reasoned:

> In *Commonwealth v. Lawson*, 454 Pa. 23, 29, 309 A.2d 391, 394 (1973), we stated: "Every commercial transaction between citizens on a street corner when unidentified property is involved does not give rise to probable cause to arrest." See also *Commonwealth v. Greber*, 478 Pa. 63, 385 A.2d 1313 (1978). Well recognized additional factors giving rise to probable cause were not present here. This is *not* a case where a trained narcotics officer observed either drugs or containers commonly known to hold drugs being exchanged. See *Commonwealth v. Burnside*, 425 Pa.Super. 425, 625 A.2d 678 (1993). This is *not* a case where the police observed multiple, complex, suspicious transactions. See *Lawson*, supra. And this is *not* a case in which the police officer was responding to a citizen's complaint or to an informant's tip. See *Commonwealth v. Dennis*, 417 Pa.Super. 425, 612 A.2d 1014 (1992), appeal denied, 535 Pa. 654, 634 A.2d 218 (1993). This is simply a case where a police officer chanced upon a single, isolated exchange of currency for some unidentified item or items, taking place on a public street corner at midday, and where appellant fled when approached by the officer. We believe that the fact of flight, under the circumstances presented, did not constitute a sufficient additional factor to give rise to probable cause.

---

2. The suppression court also relied upon our Supreme Court's *per curiam* order in *Commonwealth v. Carter*, 543 Pa. 510, 673 A.2d 864 (1996), in which the high court summarily reversed the appellant's conviction based upon its holding in *Banks*. This per curiam order carries no precedential weight. *See Commonwealth v. Tilghman*, 543 Pa. 578, 588–90, 673 A.2d 898, 904 (1996) (Supreme Court's entry of per curiam order affirming or reversing final order of lower tribunal signifies the Court's agreement or disagreement with the result below, but does not address its legal rationale). Nevertheless, given the facts in *Carter*, as summarized in Justice Castille's dissent, the case is distinguishable for the same reasons we find *Banks* to not control the instant appeal.

Under the Fourth Amendment, we have long held that flight alone does not constitute probable cause for an arrest. *Commonwealth v. Jeffries,* 454 Pa. 320, 311 A.2d 914 (1973). Of course, as the Superior Court recently held in *Commonwealth v. Frank,* 407 Pa.Super. 500, 595 A.2d 1258 (1991), flight coupled with additional facts that point to guilt may establish probable cause to arrest. Accord *Jeffries,* supra. But the additional facts here do not by themselves "point to guilt." We find that mere police observation of an exchange of an unidentified item or items on a public street corner for cash (which alone does not establish probable cause to arrest) cannot be added to, or melded with the fact of flight (which alone does not establish probable cause to arrest) to constitute probable cause to arrest. Such facts, even when considered together, fall narrowly short of establishing probable cause.

*Banks,* 658 A.2d at 753 (emphasis in original) (footnote omitted). In the present case, the suppression court ruled that the only distinctions in the facts before it—two transactions involving an unidentified object for cash observed at night—did not warrant a different result. We cannot agree.

■ Unlike the paucity of incriminating circumstances in *Banks,* the testimony presented at the suppression hearing in the present case established that the police officer was not, as was apparently the case in *Banks,* on routine patrol, but rather was an experienced narcotics officer who, with the aid of binoculars, established a nighttime surveillance of a well-lit street corner in response to citizens' complaints of drug dealing at that location, and because of the officer's personal knowledge and prior drug arrests that he had made there. The police officer first observed Appellee interrupt a conversation with two men and cross the street to meet another man, with whom he exchanged for cash a small item that had been hidden in his shoe. He then observed Appellee walk to and open a trunk of a car to retrieve a paper bag which, in turn, contained a plastic bag, and retrieve additional small objects. Appel-

lee held these objects between his fingers, and then placed them in his shoe. The officer next observed Appellee repeat the same conduct when he made a second exchange with a different individual who had approached him. Although the officer was unable to identify the small item that was exchanged, he was able to testify that Appellee held them in a manner consistent with vials of cocaine.

Clearly the totality of all these facts gave rise to probable cause to arrest. In determining whether probable cause exists under any given set of circumstances, our Supreme Court has previously stated that:

All of the detailed facts and circumstances must be considered. The time is important; the street location is important; the use of a street for commercial transactions is important; the number of transactions is important; the place where the small items were kept by one of the sellers is important; the movements and manners of the parties are important.

*Commonwealth v. Lawson,* 454 Pa. 23, 28–29, 309 A.2d 391, 394 (1973). As noted above, a consideration of each of these factors in the present case "point to guilt." *Banks,* 658 A.2d at 753. The fact that the police officer was unable to identify the object as contraband does not prevent probable cause from arising, given his belief and based on his experience as a narcotics officer for over eight years, that the small objects were drug vials, when coupled with the totality of all the other circumstances. To assign no weight to the officer's belief, based on prior experience, that he observed a drug transaction because he did not actually see them, would, as Justice Cappy wrote in his Opinion in support of affirmance in *Commonwealth v. Evans,* 546 Pa. 417, 423–25, 685 A.2d 535, 538 (1996), "[serve] to elevate the standard of probable cause to that of almost actual certitude. This is clearly an erroneous interpretation as the standard for determining probable cause has never been held to be such an exacting one." *See also Burnside, supra* (probable cause not based on certainties). Thus, the court below erred in concluding that the probable cause

was lacking to arrest Appellee and, therefore, any contraband retrieved from his person was improperly suppressed.[3]

The issue then becomes whether the police were justified in using the key found on Appellee's person to open the trunk of his automobile and retrieve the contraband hidden therein. Given the recent holdings of our Supreme Court regarding warrantless searches, the automobile exception, and exigent circumstances, as well as searches incident to arrest, we are constrained to hold that this evidence was properly suppressed.

In *Commonwealth v. White*, 543 Pa. 45, 699 A.2d 896 (1995), our Supreme Court summarized the rule in Pennsylvania regarding the warrantless searches of vehicles:

> [T]he general rule is that a search warrant is required before police may conduct any search. As an exception to this rule, police may search a vehicle without a warrant where: (1) there is probable cause to believe that an automobile contains evidence of criminal activity; (2) unless the car is searched or impounded, the occupants of the automobile are likely to drive away and contents of the automobile may never again be located by police; and (3) police have obtained this information in such a way that they could not have secured a warrant for the search, i.e., *there are exigent circumstances.*

*White*, 543 Pa. Id. at 51–52, 669 A.2d at 900 (emphasis in original). Subsequent case law from our Supreme Court has reaffirmed, on independent state constitutional grounds,

that a warrantless search of an automobile in this Commonwealth requires both probable cause *and* exigent circumstances. *See generally, Commonwealth v. Labron*, 543 Pa. 86, 669 A.2d 917 (1995), *rev'd, ——* U.S. *——,* 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996), *on remand,* 547 Pa. 344, 690 A.2d 228 (1997).[4]

■ Clearly, our Supreme Court, in both *White* and *Labron, supra,* rejected the inherent mobility of the automobile alone as creating a sufficient exigency under our state constitution to obviate the need for a warrant. *White,* 669 A.2d at 899–901; *Labron,* 669 A.2d at 924. *See also Commonwealth v. Cockfield,* 431 Pa. 639, 644, 246 A.2d 381, 384 (1968) ("Although it *sometimes* may be reasonable to search a movable vehicle without a warrant, the [moveability] of the area to be searched is not alone a sufficiently 'exigent circumstance' to justify a warrantless search") (emphasis in original). Thus, any previous cases decided in this Commonwealth which relied on the "automobile exception" to justify the search and seizure of contraband, without the concomitant exigent circumstances, no longer reflect the current state of Pennsylvania search and seizure law. *See, e.g., Commonwealth v. Hendrix,* 426 Pa.Super. 616, 623–25, 627 A.2d 1224, 1228; *Commonwealth v. Ferrari,* 376 Pa.Super. 307, 326–28, 545 A.2d 1372, 1382 (1988).[5] Rather, our Supreme Court has reaffirmed the rule of law that there is no per se "automobile exception" to the warrant requirement. Finally, we note that the search of the vehicle's trunk cannot be upheld, under independent

---

3. The cases cited by Appellee are inapposite. Although in *Banks* our Supreme Court cited with approval its prior decision in *Commonwealth v. DeWitt,* that case did not involve multiple observations of suspected drug transactions in a "high drug" area, but rather involved a traffic stop. As noted in n. 1, Appellee's reliance on our Supreme Court's *per curiam* orders in *Commonwealth v. Albino,* 541 Pa. 424, 664 A.2d 84 (1996), *Commonwealth v. Lopez,* 543 Pa. 321, 671 A.2d 224 (1996), and *Carter,* supra, is improper. Finally, like the circumstances presented in *Banks, Commonwealth v. Malson,* 434 Pa.Super. 155, 642 A.2d 520 (1994), involved a single nighttime exchange observed by the police officer from 50–100 feet away and without the aid of binoculars.

4. For a brief yet concise review of the recent developments concerning warrantless automobile searches pursuant to the Pennsylvania Constitution, *see Commonwealth v. Theobald,* 696 A.2d 188 n. 2 (Pa.Super.1997).

5. Although not delineated within the opinions, it appears that *Ferrari* was decided solely on federal constitutional grounds while *Hendrix* encompassed both state and federal constitutional guarantees. Contrary to the Commonwealth's assertion in its reply brief, we believe Appellee's suppression motion was based on federal and state constitutional grounds.

state constitutional grounds, on the basis of a search incident to arrest. *See White,* 669 A.2d at 902 ("merely arresting someone does not give police carte blanche to search *any* property belonging to the arrestee ... there is no justifiable search incident to arrest under the Pennsylvania Constitution save for the search of the person and the immediate area which the person occupies during his custody.") (emphasis in original).

In the present case the officers testified at the suppression hearing that they did not have a search warrant for the car and that Appellee was in custody before the trunk of his vehicle was open. In addition, no testimony was presented that exigent circumstances existed such that, once the vehicle was under the control of the officers, they were unable to secure a search warrant. *See Commonwealth v. Rosenfelt,* 443 Pa.Super. 616, 646–48, 662 A.2d 1131, 1146 (1995)(because car was in control and dominion of the parole officers and no discernible exigency was present, the warrantless search violated state constitution). While we are cognizant of both the Commonwealth's argument that the immobilization of the vehicle may constitute a greater intrusion upon privacy than searching it, *see Rosenfelt,* 662 A.2d at 1147 (Wieand, J., dissenting), as well as the safety concerns and limited resources should the police be required to stand guard over the vehicle in a high drug area while a search warrant is secured, we interpret current case law as requiring such actions by the law enforcement officers in the interest of protecting the privacy interests of the individual. Thus, we are constrained to hold that any evidence seized from the trunk was properly suppressed.

Order affirmed in part and reversed in part. The matter is remanded for further proceedings. Jurisdiction relinquished.