**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Brahulio NOBALEZ, Appellant.**

Superior Court of Pennsylvania.

Submitted May 6, 2002.

Filed Aug. 6, 2002.

John Packel, Public Defender, Philadelphia, for appellant.

Catherine L. Marshall, Asst. Dist. Atty., Philadelphia, for Com., appellee.

BEFORE: HUDOCK, KLEIN and CAVANAUGH, JJ.

OPINION BY KLEIN, J.:

¶ 1 Brahulio Nobalez appeals the judgment of sentence entered following his conviction for possession of a controlled substance with intent to deliver. He argues that the police lacked probable cause to detain and search him and that the trial court therefore erred in denying his motion to suppress physical evidence. Finding no error, we affirm.

¶ 2 On December 13, 2000 at approximately 9:00 AM, Philadelphia police officer Robert Kilmer and his partner were traveling in a marked police car through an area of Philadelphia known as the "Badlands." As Officer Kilmer testified, that area is a residential neighborhood known for the large amount of drug trafficking that takes place there. Officer Kilmer is a highly experienced police officer, at the time of the arrest having served nine years on the force, including three years working in the "Badlands." He had made approximately thirty narcotics arrests within a one-block radius of the block where Nobalez was arrested, and ten narcotics arrests on that precise block.

¶ 3 While on routine patrol in a marked vehicle in the "Badlands," from some fifteen to twenty feet away, Officer Kilmer observed an unknown male hand Nobalez money. After receiving the money, Nobalez reached into his jacket pocket, took out his hand in a fist, and opened it to drop objects into the other man's hand. Based on the nature of the area, the way the money was handled and the way the objects were dropped, Officer Kilmer concluded that he had just witnessed the sale of drugs.

¶ 4 After leaving his patrol car, Officer Kilmer approached Nobalez and stopped him. Although Nobalez was stopped, the other male fled down an alley and was not caught. Officer Kilmer searched Nobalez and discovered eleven small packets containing a substance later identified as cocaine, as well as $114 cash. Nobalez was arrested and charged with possession of a controlled substance with intent to deliver. He filed a motion to suppress evidence of the drugs and cash found on him, but that motion was denied by Judge Genece E. Brinkley of the Court of Common Pleas of Philadelphia County. After Nobalez waived his right to a jury trial, Judge Brinkley convicted him and sentenced him to two to five years' imprisonment followed by three years' probation. Nobalez now appeals his judgment of sentence and seeks review of the denial of the motion to suppress.

¶ 5 When reviewing an order denying a motion to suppress evidence, we must determine whether the evidence of record supports the factual findings of the trial court. *Commonwealth v. Jackson,* 451 Pa.Super. 129, 678 A.2d 798, 800 (1996). In making this determination, this court may only consider the Commonwealth's evidence and the defendant's evidence that remains uncontradicted. *Id.* We view the Commonwealth's evidence, not as a layperson, but through eyes of a trained police officer. *Commonwealth v. Johnson,* 444 Pa.Super. 488, 664 A.2d 178, 179 (1995). We do not review the evidence piecemeal, but consider the totality of the circumstances in assessing whether probable cause existed. *Commonwealth v. Banks,* 540 Pa. 453, 658 A.2d 752 (1995). Additionally, it is exclusively within the province of the trial court to determine the credibility of the witnesses and the weight to be accorded their testimony. *Commonwealth v. Fitzpatrick,* 446 Pa.Super. 87, 666 A.2d 323, 325 (1995). If the evidence supports the findings of the trial court, those findings bind us and we may reverse only if the suppression court drew erroneous legal conclusions from the evidence. *Id.*

¶ 6 Nobalez relies heavily on *Banks, supra* to support his argument that "our Courts do not permit police to detain a citizen on the basis of just the [sic] one observed transaction." In *Banks,* a police officer saw a man give an object to an unidentified female in exchange for money. *Id.* at 752. The police officer caught the man after he attempted to flee, searched him, and found cocaine. *Id.* The Court held that the facts in *Banks* fell narrowly short of establishing probable cause because the exchange of unidentified objects for cash coupled with an attempt to flee is not enough to give rise to probable cause. *Id.* at 753. However, as the Court stated, "Well recognized additional factors giving rise to probable cause were not present." *Id.* The number of transactions does not single-handedly decide the issue. Where additional factors are present, probable cause may arise.

¶ 7 In this case, sufficient additional factors existed to give Officer Kilmer probable cause to search Nobalez. First, a highly experienced narcotics officer observed the transaction. His experience enabled him to interpret the way Nobalez and his counterpart were acting, and know in a way a layperson could not that he was watching a drug sale.

¶ 8 Second, the events in this case took place in an area Officer Kilmer knew from personal experience and by its reputation to be a drug trafficking area. Officer Kilmer knew from experience that this block in particular was a location where drug sales were made, because he had made ten narcotics arrests on that block alone and some thirty in the general area. His knowledge of the nature of the area informed his belief that he was witnessing an illegal narcotics sale.

¶ 9 Third, the buyer fled. Although the defendant's flight combined with an unknown commercial transaction was not enough for the *Banks* Court to find probable cause, as explained above the evidence in this case goes beyond what was available in *Banks.* Thus, although we agree with Nobalez that the law does not permit custodial detentions or searches on the sole basis of a single commercial transaction for unknown objects, we nonetheless disagree that the suppression court erred. The evidence in this case went beyond a single transaction. While he did not actually see the drugs, Officer Kilmer's experience combined with two men's behavior and the buyer's flight enabled him to conclude reasonably that a drug transaction was taking place. Looking at the totality

of the circumstances, we hold that these factors together support a finding of probable cause.

¶ 10 Our decision in *Commonwealth v. Stroud*, 699 A.2d 1305 (Pa.Super.1997) reinforces our conclusion. In *Stroud*, a police officer observed a man engage in two exchanges of unidentified objects for money. *Id.* at 1307. As a result of neighbor's complaints, a highly experienced police officer was conducting a surveillance of a known drug-trafficking corner. The police officer observed the accused accept cash in exchange for a small object that he retrieved from his shoe. *Id.* at 1308. He then repeated the same activity with a second person. The officer concluded based on experience that he was witnessing drug transactions. *Id.* at 1308. This court held that the totality of those circumstances gave rise to probable cause. *Id.* at 1309.

¶ 11 As we stated in *Stroud*, "The fact that the police officer was unable to identify the object as contraband does not prevent probable cause from arising, given his belief and based on his experience as a narcotics officer for over eight years ... when coupled with the totality of all the other circumstances." *Id.* This reasoning applies with equal force here. Officer Kilmer's experience enabled him to know with reasonable certainty that Nobalez was conducting a drug sale. The totality of the commercial transaction coupled with Officer Kilmer's experience, the area's character, and the other man's flight gave rise to probable cause.

¶ 12 Nobalez points to three cases where this court found probable cause under similar circumstances, but the Pennsylvania Supreme Court reversed this court's decision *per curiam*. Those *per curiam* reversals are *Commonwealth v. Albino*, 541 Pa. 424, 664 A.2d 84 (1995), *Commonwealth v. Carter*, 543 Pa. 510, 673 A.2d 864 (1996), and *Commonwealth v. Lopez*, 543 Pa. 321, 671 A.2d 224 (1996). However, we are not bound here by the high court's orders in those cases.

¶ 13 The Supreme Court's *per curiam* reversals carried nothing more than law of the case effect. *Commonwealth v. Tilghman*, 543 Pa. 578, 673 A.2d 898 (1996); *Stroud, supra.* In *Tilghman*, the trial court had granted parole to defendants whose aggregate sentences exceeded two years. The Commonwealth appealed, challenging whether the Common Pleas court or the Parole Board had jurisdiction to consider the parole petitions. In an earlier case, *Commonwealth v. Harris*, 423 Pa.Super. 190, 620 A.2d 1175 (1993), this court had held that if the aggregate sentences amount to two years or more, jurisdiction lies with the parole board. In a third case, *Abraham v. Department of Corrections of Pennsylvania*, 150 Pa. Cmwlth. 81, 615 A.2d 814 (1992), *aff'd per curiam*, 535 Pa. 122, 634 A.2d 214 (1993), the Supreme Court affirmed the Commonwealth Court's contrary determination in a short, *per curiam* order that offered no explanation. The defendants contended that without saying so, the Supreme Court's order in *Abraham* had overruled this court's decision in *Harris*. The Supreme Court disagreed, and held: "[W]e did not *sub silentio* overrule *Harris* by our *per curiam* order of affirmance in *Abraham.*" *Tilghman*, 673 A.2d at 905. Justice Cappy, writing for the majority, explained that a *per curiam* order affirming or reversing a lower tribunal signifies the Court's agreement or disagreement with the lower tribunal's final disposition—i.e., affirm, reverse, vacate, remand—of the matter on appeal. Unless the Court affirms on the basis of the opinion below, the lower tribunal's opinion is . neither approved nor disapproved. The Court sim-

ply is disposing of that case only, with no more than law of the case effect.

¶ 14 Although *Tilghman* is not specifically on point, as it dealt with an affirmance *per curiam* rather than a reversal, its *dicta* clearly point the way in this case. *See Stroud,* 699 A.2d at 1308 n. 2 ("Th[e Supreme Court's] *per curiam* order [summarily reversing a conviction citing *Banks*] carries no precedential weight."). The *per curiam* reversals do not constrain our decision. Under the law as expressed in *Banks* and its progeny, we affirm the trial court.

¶ 15 Nobalez also cites *Commonwealth v. Malson,* 434 Pa.Super. 155, 642 A.2d 520 (1994), and *Commonwealth v. Hunt,* 280 Pa.Super. 205, 421 A.2d 684 (1980). However, those cases are distinguishable. In *Malson,* a police officer merely saw two people exchanging objects and was unable to make any conclusions as to what was being exchanged. Similarly, in *Hunt,* a police officer could not see what was being exchanged. In stark contrast, in this case a seasoned narcotics officer was able to conclude from his observations and based on his experience, the nature of the area, and the other man's flight that a drug transaction was taking place.

¶ 16 Looking at the totality of the circumstances in this case, Officer Kilmer possessed probable cause to arrest and search Nobalez. The motion to suppress the money and drugs found on Nobalez was properly denied.

¶ 17 Judgment of sentence affirmed.