J-A13038-19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| JOSEPH W. ROBBINS, | : | |
| | : | |
| Appellee | : | No. 1886 EDA 2018 |

Appeal from the Order Entered June 1, 2018
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0000270-2018

BEFORE:    SHOGAN, J., NICHOLS, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:              **FILED AUGUST 06, 2019**

The Commonwealth of Pennsylvania appeals from the June 1, 2018 order granting the omnibus motion, *inter alia*, to suppress evidence, filed by Joseph W. Robbins (Robbins).[1]  Upon review, we reverse and remand.

In late 2017, Robbins was arrested and charged with possession of a controlled substance and possession with the intent to deliver.  On February 26, 2018, Robbins filed an omnibus motion seeking to suppress the narcotics

---

[1] The Commonwealth has the right to appeal the trial court's June 1, 2018 order pursuant to Pa.R.A.P. 311(d), which provides that "[t]he Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution."  In this case, the Commonwealth certified in its notice of appeal that the order granting Robbins's motion to suppress "terminates or substantially handicaps the prosecution."  Notice of Appeal, 6/26/2018.

*Retired Senior Judge assigned to the Superior Court.

recovered by police. Motion to Suppress, 2/26/2018. Specifically, Robbins asserted that the suppression of evidence was warranted because he was searched without reasonable suspicion and arrested without probable cause. *Id.* at 1. A hearing on Robbins's motion was held on June 1, 2018. At the hearing, the Commonwealth offered the testimony of Officer Patrick Banning. As summarized by the trial court:

> [O]n October 25, 2017, at approximately 5:20 p.m., [Officer Banning[2]] set up a plain clothes narcotics surveillance at the intersection of Jasper and Lippincott Streets. [Officer Banning testified that this area was a "very high-drug area."] Officer Banning further testified that at approximately 5:25 p.m., he observed a white female by the name of Alexis Archavalia, approach a black female by the name of Diamond Gant outside of 1906-1908 East Lippincott Street. Further, Officer Banning stated that he observed Archavalia approach Gant outside 1908 East Lippincott Street, Archavalia handed Gant unknown amounts of United States Currency, Gant then retrieved what Officer Banning believed to be a blue bundle of heroin from the front of her shirt, picked an unknown amount of packet(s) from the alleged bundle, and handed them to Archavalia. Officer Banning then testified that Archavalia left the area eastbound on Lippincott and after sending flash information of her description, another police officer stopped her. Further, Officer Banning testified one [] packet[,stamped "Jaguar" with a picture of a jaguar,] of what appeared to be heroin was recovered by the officer who [stopped Archavalia].
>
> Officer Banning goes on to testify that at 5:30 p.m., he observed a white male by the name of Gregory Antzak, have a

---

[2] Officer Banning testified that he was currently assigned to the Narcotics Strike Force, and had been a narcotics officer for approximately eighteen years. N.T., 6/1/2018, at 6. He further testified that he had participated in "thousands" of arrests and surveillances. *Id.* Additionally, throughout his time on the force, he had become familiar with how drugs are sold, trafficked, and packaged. *Id.*

transaction with Gant in the same manner as previously described. Again, after Officer Banning sent out a flash with the description of Antzak, another police officer stopped Antzak recovering what appeared to be three (3) packets of heroin or fentanyl [stamped "Jaguar"] along with one (1) container of what appeared to be crack cocaine. Officer Banning further testified that at 5:35 p.m., he witnessed another white male, by the name of Aaron Marinari[,] have a transaction with Gant in the same way as the other transactions described above. Marinari was stopped and six [] packets of heroin [stamped "Jaguar"] were recovered. Immediately after that transaction, Gant left the area southbound on Jasper Street.

Next, Officer Banning testified that at approximately 5:45 p.m., he observed Gant come back into his view on the west side of Jasper and Lippincott Streets. Officer Banning stated that he observed Gant talking with several black females and black males. Officer Banning further testified that he first saw [a man later identified as Robbins] at 5:53 p.m., approach Gant on the west side of Jasper and Lippincott Street[s]. Officer Banning went on to state that he observed [Robbins] retrieve a white rectangular object from his person which he believed to be a rack of heroin. [Robbins] allegedly opened one side of the white rectangular object and handed what [Officer Banning] believed to be a bundle or bundles of heroin to Gant, and Gant then walked eastbound on Lippincott Street.

Finally, Officer Banning testified that he observed Gant encounter an unknown black male on a bicycle give Gant an unknown amount of United States Currency in exchange for an unknown number of packet(s) of what was believed to be heroin. Following this observation, Officer Banning testified "[a]t that point Your Honor, I instructed backup officers to come stop and investigate the unknown black male on the bike who left eastbound, arrest Gant, and to investigate [Robbins]." While [Robbins] and Gant were in fact stopped, the unknown black male left on a bicycle and was never stopped. Additionally, Officer Banning testified that [Robbins] began to ride a bicycle eastbound on Lippincott Street as backup officers approached and at some point was stopped by another police officer.

Trial Court Opinion, 8/28/2018, at 2-3 (citations and formal titles omitted).

Officers searched Robbins and recovered eight bundles of heroin. N.T.,

6/1/2018, at 14. "Each bundle had 14 clear Ziploc plastic packets, each containing a blue glassine packet. They were all stamped with the word 'Jaguar' and a picture of a jaguar for a total of 112 packets from [Robbins's] right jacket pocket." *Id.* at 15.

At the conclusion of the hearing, the trial court determined that while "reasonable suspicion existed" to stop Robbins, the Commonwealth failed to establish that there was "probable cause to support the arrest." *Id.* at 36. Specifically, the trial court stated that the testimony of "Officer Banning clearly and unequivocally established reasonable suspicion for the stop, [but] not probable cause for an immediate arrest." *Id.* at 34. Based upon the foregoing findings, the trial court granted Robbins's request to suppress the narcotics recovered by police.

This appeal followed.[3] On appeal, the Commonwealth presents one issue for this Court's review: "Did the [trial] court err by suppressing [Robbins's] contraband where police had probable cause to arrest him after he supplied a woman who was selling heroin on the street in a high drug crime area?" Commonwealth's Brief at 3.

> When the Commonwealth appeals from a suppression order, this Court follows a clearly defined scope and standard of review. We consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains

---

[3] Both the Commonwealth and trial court complied with Pa.R.A.P. 1925.

uncontradicted. This Court must first determine whether the record supports the factual findings of the suppression court and then determine the reasonableness of the inferences and legal conclusions drawn from those findings. In appeals where there is no meaningful dispute of fact, as in the case *sub judice,* our duty is to determine whether the suppression court properly applied the law to the facts of the case.

***Commonwealth v. Arthur***, 62 A.3d 424, 427 (Pa. Super. 2013) (quotation marks and citations omitted).

Here, the facts are not in dispute, as only one witness (Officer Banning) testified at the suppression hearing. Thus we are presented solely with the legal question of whether the facts recited by the trial court, as set forth *supra*, give rise to probable cause to support Robbins's arrest, or, as the trial court concluded, only reasonable suspicion to stop and investigate further.

In determining whether probable cause exists under any given set of circumstances, our Supreme Court has previously stated that:

All of the detailed facts and circumstances must be considered. The time is important; the street location is important; the use of a street for commercial transactions is important; the number of transactions is important; the place where the small items were kept by one of the sellers is important; the movements and manners of the parties are important.

***Commonwealth v. Stroud***, 699 A.2d 1305, 1309 (Pa. Super. 1997) (citation omitted).

Our case law is replete with decisions addressing probable cause for arrest in the context of drug trafficking on public streets. It is well-established that not every transaction involving

unidentified property exchanged on a street corner gives rise to probable cause for arrest. However, when certain other factors are present, police officers may be justified in concluding that the transaction is drug-related, and hence that probable cause for arrest exists. It is important to view all of the facts and the totality of the circumstances in order to avoid rendering a decision that is totally devoid of [the] commonsensical inferences [that are] drawn by trained police officers with regard to drug activity.[4]

For example, in [**Commonwealth v. Nobalez**, 805 A.2d 598 (Pa. Super. 2002)], an experienced officer, who was on routine patrol in a residential neighborhood known for its high level of drug trafficking, observed the following street transaction: an unknown male approached the appellant and handed him money, at which point the appellant reached into his jacket and then dropped an unknown object into the other man's hand. Believing that he had just witnessed a drug sale, the officer left his patrol car, approached the appellant, and stopped him, at which point the purchaser fled and was not apprehended. Upon searching the appellant, the officer discovered numerous small packets of cocaine. The appellant filed a motion to suppress evidence of the drugs based on lack of probable cause for arrest, which the trial court denied. In affirming the trial court's denial, this Court cited several factors: the extensive experience of the narcotics officer who observed the transaction; the justified reputation of the area in which the transaction took place as a site of a high level of drug trafficking; and the flight of the buyer.

The **Nobalez** [C]ourt cited [**Stroud**] in support of its decision. In **Stroud**, a highly experienced police officer was conducting nighttime surveillance of a street corner which had been the focus of neighborhood complaints because of drug-

---

[4] "[A] police officer's experience may fairly be regarded as a relevant factor in determining probable cause." **Commonwealth v. Thompson**, 985 A.2d 928, 935 (Pa. 2009). Moreover, "[t]he fact that the police officer was unable to identify the object as contraband does not prevent probable cause from arising, given his belief and based on his experience as a narcotics officer ... when coupled with the totality of all the other circumstances." **Stroud**, 699 A.2d at 1309.

- 6 -

trafficking activity. The officer observed two transactions in which the defendant accepted cash from two other individuals in exchange for an object that he retrieved from his shoe. Between the two transactions, the officer also observed the defendant remove small objects from the trunk of a nearby automobile and place them in his shoe. Following these observations, the officer arrested the defendant and, in a search subsequent to arrest, discovered vials of illegal drugs on his person. The trial court granted the defendant's motion to suppress the drugs, based on lack of probable cause for arrest. However, this Court reversed, citing the totality of the facts and circumstances, in particular the extensive experience of the narcotics officer, who was engaged in binocular-aided surveillance of a street corner known both to the neighborhood and to the officer personally as a site of drug-dealing and drug arrests.

***Commonwealth v. Wells***, 916 A.2d 1192, 1195-96 (Pa. Super. 2007) (quotation marks, emphasis and some citations omitted; some brackets in original).

In this case, the trial court determined the Commonwealth was required to present evidence not only related to Officer Banning's decision to stop Robbins, but also "regarding the manner in which the stop was effectuated, the precise manner of the search, the location in which the narcotics were recovered, along with the circumstances of the actual arrest." Trial Court Opinion, 8/28/2018, at 7-8. In that regard, the court found that while Officer Banning's testimony was enough to establish reasonable suspicion allowing police to stop Robbins and conduct an additional investigation, the Commonwealth failed to present evidence regarding the manner in which the subsequent search and seizure of Robbins occurred.

Specifically, the trial court noted that the only testimony that was presented at the hearing was that of Officer Banning, who was "the officer conducting the surveillance [and who] 'instructed backup officers to stop and investigate'" Robbins, but Officer Banning was not present for the subsequent search and arrest. *Id.* Thus, the absence of testimony from the arresting officer[5] left the trial court guessing whether Robbins was subjected to an additional investigation after being stopped by police or whether Robbins was immediately arrested and then searched. *Id.* at 9. The trial court opined this distinction was important based upon: (1) the Commonwealth's evidentiary burden of putting forth evidence regarding the subsequent stop and arrest of Robbins; and (2) the trial court's finding that police had only reasonable suspicion to stop and investigate Robbins and did not have probable cause to arrest him immediately. *Id.* at 7-10.

On appeal, the Commonwealth argues, however, that probable cause to arrest Robbins existed when Officer Banning, after observing several hand-to-hand transactions between Gant and other individuals who were subsequently stopped by police and found to be in possession of drugs,

---

[5] The Commonwealth offered to reopen the suppression hearing and call Officer Smalls, the arresting officer, whom the Commonwealth had noted was available to testify, but the trial court did not accept the offer. N.T., 6/1/2018, at 14, 29.

observed Robbins "re-upping"[6] Gant with drugs. Commonwealth's Brief at 9-12. Furthermore, based upon the averments set forth in Robbins's motion to suppress, the Commonwealth disagreed with the trial court's finding that the Commonwealth was obligated to present evidence regarding the manner in which the stop, search, and arrest of Robbins occurred. *Id.* at 13-14 *citing* Pa.R.Crim.P. 581(D) (requiring a motion to suppress to "state specifically and with particularity the evidence sought to be suppressed, the grounds for suppression, and the facts and events in support thereof") *and* **Commonwealth v. Dixon**, 997 A.2d 368 (Pa. Super. 2010) (*en banc*) (holding the Commonwealth met its burden of proof in a suppression motion where Dixon alleged only that the suppression of evidence was necessary because of a lack of reasonable suspicion and/or probable cause, as opposed to the manner in which the evidence was seized following the stop). Upon review of the record and applicable case law, we agree with the Commonwealth.

Based on the cases cited *supra* and others, we find several factors relevant to our determination that probable cause existed in this case. Here, Officer Banning, a narcotics officer with nearly two decades of experience on the Narcotics Strike Force, who testified that he participated in thousands of

---

[6] Officer Banning testified that "re-upping" is "when a seller runs out [of product] on the block, somebody else has more product, brings it to the corner." N.T., 6/1/2018, at 16.

arrests and surveillances, set up surveillance in the early evening hours in a "very high-drug area." N.T., 6/1/2018, at 6-7. Once the surveillance was established, Officer Banning observed three hand-to-hand transactions between Gant and three individuals, later stopped and identified by police. *Id.* at 7-10. Each interaction occurred in a similar fashion, and based upon Officer Banning's experience, he suspected Gant was selling drugs to these individuals. *Id.* at 16. Indeed, when stopped by police, each individual was found to be in possession of glassine bags of suspected narcotics. *Id.* at 7-10.

Armed with this knowledge, Officer Banning continued his surveillance and eventually observed Robbins approach Gant and retrieve a white rectangular object from his person, which Officer Banning suspected was a rack of heroin. *Id.* at 10-11. Officer Banning watched as Robbins opened the container and handed what Officer Banning believed was a bundle or bundles of heroin to Gant before walking away. *Id.* at 11-12. Based on this interaction, Officer Banning believed Robbins was "re-upping" the block and Gant. *Id.* at 16. Immediately following this interaction, Officer Banning observed Gant participate in yet another hand-to-hand transaction with an unidentified man. *Id.* at 12. Given the totality of the circumstances, we

conclude that police possessed probable cause to arrest Robbins.[7] ***See***

***Thompson***, 985 A.2d at 936-37 (concluding that "[b]ecause we have

determined that a police officer's experience may be fairly regarded as a

relevant factor in determining probable cause, and due to the presence of

additional factors in support … [such as] the fact that the transaction at

issue occurred in the nighttime hours, on the street, in a neighborhood that

the police department selected for the 'Operation Safe Streets' program[,]"

probable cause existed to arrest Thompson). ***See also Commonwealth v.***

***Smith***, 979 A.2d 913, 920 (Pa. Super. 2009) ("Here, the experienced

narcotics officer observed [Smith's] suspicious actions, uncontradicted at the

hearing by any other evidence. Interpreting these observations through the

lens of his training and experience, including fifty to seventy-five

surveillances in the immediate neighborhood, he concluded that criminal

---

[7] We note that, in its decision to suppress the narcotics evidence in this case, the trial court relied, in part, on Officer Banning's testimony that after he observed the interaction between Gant and Robbins, he told backup officers assisting the surveillance to "arrest" Gant and "investigate" Robbins. N.T., 6/1/2018, at 12. ***See*** Trial Court Opinion, 8/28/2018, at 9-10 ("The clearest indication to th[e trial c]ourt that a substantial question existed in the mind of Officer Banning regarding the appropriateness of an immediate arrest of [Robbins] is reflected in the instructions Officer Banning gave to his backup officers. It was only [] Gant who[m] Officer Banning gave instructions for the backup officers to immediately arrest. Officer Banning unequivocally instructed backup officers to 'investigate'" Robbins.) (internal citations omitted). Officer Banning's instruction to investigate as opposed to arrest Robbins is of no moment; in light of Officer Banning's testimony, as cited in detail *supra*, we find probable cause existed to arrest Robbins without any further investigation.

drug activity was afoot. This was not a situation where the officer's training and experience [were] offered as an independent factor to bootstrap an otherwise deficient observation. Rather, in the totality of circumstances, the officer used his training and experience as the nexus for the conclusion that based on his observations there was criminal drug activity afoot and that the police had probable cause to arrest.") (citation omitted).

Finally, we conclude that the Commonwealth was not, as the trial court suggests, required to present evidence detailing the manner in which the subsequent stop, search, and arrest of Robbins occurred. *See* Trial Court Opinion, 8/28/2018, at 7-8 ( "[T]he Commonwealth was required to produce evidence regarding the manner in which the stop was effectuated, the precise manner of the search, the location in which the narcotics were recovered, along with the circumstances of the actual arrest."). In concluding as such, we find this Court's decision in *Dixon*, *supra*, instructive.

In *Dixon*, a panel of this Court addressed the Commonwealth's evidentiary burden when presented with a defendant's motion to suppress. Specifically, the Court reiterated that Pa.R.Crim.P. 581(D) requires a defendant seeking the suppression of evidence to set forth the specific theories and grounds for relief. *Id.* at 373. In turn, the Commonwealth is required only to put forth evidence to establish that the seized items were not obtained in the unlawful manner set forth by the defendant in his

- 12 -

motion. Cognizant of the dictates of Rule 581(D), upon its own independent review, the *Dixon* Court found that Dixon "did not assert as a ground for suppression that the manner of the seizure of the physical evidence violated Dixon's constitutional rights, only that the seizure was not warranted in the first place." *Id.* at 375. Thus, this Court concluded that the Commonwealth was not obligated to present testimony regarding how the contraband was recovered.

Similarly, in this case, Robbins filed a motion to suppress physical evidence and set forth, with specificity, the grounds for suppression. Specifically, Robbins asserted that suppression was necessary because: (1) his arrest was illegal and without probable cause, "a lawfully issued warrant or other legal justification[;]" and (2) "he was subjected to a stop and frisk on less than reasonable suspicion." Omnibus Motion, 2/26/2018, at 1. As in *Dixon*, because Robbins did not assert the manner in which the police seized the narcotics as a ground for suppression in his motion, the Commonwealth was not required to present additional evidence detailing the actual stop and specific way the narcotics were recovered.

In light of the foregoing, we find the trial court's conclusions erroneous and contrary to our well-established case law. Since police had probable cause to arrest Robbins based upon the aforementioned observations of Officer Banning, the drugs were lawfully seized regardless if the search occurred prior or incident to Robbins's formal arrest.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 8/6/19